

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Dan W. Jackson
District Attorney
Houston, Texas

Dear Sir:                    Attention: Conrad J. Landram

                             Opinion Number O-4761
                             Re: (1) Responsibility of board
                             of trustees of independent school
                             district for moneys derived from
                             school cafeteria and sale of foot-
                             ball tickets.
                             (2) Purchase of supplies from cor-
                             poration where member of board of
                             trustees owns stock thereof.

At the instance of the Superintendent of the Goose
Creek Independent School District you have requested the
opinion of this department upon the above captioned questions.
Your letter of request is quoted, in part, as follows:

"Question One:  Is there any difference, as
far as a board of school trustees is concerned,
between 'tax money,' so called, and any other
money, e.g., money taken in at a school cafeteria,
money derived at a football game from the sale of
tickets, insofar as trustee responsibility attends
thereto?  Does a citizen of this school district
have the same right legally to ask what becomes of
cafeteria money, or football money, or science fee
money as he does to ask what becomes of 'tax money?'
Is not money that reaches the hands of the teacher,
the principal or the superintendent of the school,
money for which the board of trustees has full re-
sponsibility no matter whether derived from school
taxes, or from any other source?  Must a teacher,

Honorable Dan W. Jackson, page #2

a principal or a superintendent of schools account for cafeteria money, football money et cetera if such moneys do not have the same status in law as 'tax money?'

"Question Two:  Where a trustee of an independent school district in Texas owns stock in a company, can it do business therewith?  Would holding stock in a large corporation make illegal a purchase if it could be shown that a school trustee on a board of trustees that authorized the purchase was the owner of just one share therein of stock?"

In answering your first question we will limit this opinion to the matters about which you specifically inquire; namely, money derived from the operation of a school cafeteria and from the sale of admission tickets to a school football game.  You also mention "science fee money"; however, as we do not know what you mean to be included by such term, it will not be discussed or covered in this opinion.

It is a matter of common knowledge that school cafeterias are maintained generally in the schools throughout the State of Texas and the United States.  In the case of Boseman et al. v. Morrow et al., 34 S. W. (2d) 654, the El Paso Court of Civil Appeals held the following:

"The cafeteria is a necessary convenience, and is not obnoxious to any constitutional or statutory inhibition, and, we think, a reasonable exercise of the discretionary power conferred upon the board of trustees.  Goodman v. School District No.1, City and County of Denver et al. (C.C.A.), 32 P. (2d) 586, 63 A.L.R. 92."

In this connection we assume that the school district is operating the cafeteria for the good of its students, and

706

is not operating the same as a mercantile establishment or a business for pecuniary gain. In our opinion it would be beyond the authority of the school board to enter into private business. We, therefore, assume that the charges made for food served are reasonably made to cover the costs of the same and the maintenance of the cafeteria.

Since the board of trustees of an independent school district may maintain a school cafeteria, it is our opinion that the responsibility for the proper operation thereof and the expenditure of funds realized therefrom properly rests with such board.

You inquire also about "money derived at a football game from the sale of tickets". The game of football has become firmly entrenched in the physical education program of the school system of this country. It is of common knowledge that charges are usually made for admission to a football game between the opposing teams of two schools. We think it within the authority of the board of trustees to foster such a program and to cause reasonable admission charges to be made. Money thus realized is usually spent for athletic equipment and supplies and to promote the physical education program; however, we think that such moneys could be spent for any lawful purpose.

Under Article 2802e, Vernon's Annotated Civil Statutes, certain school districts and cities which had assumed control of the public schools therein were authorized "to build or purchase buildings and grounds for the purpose of constructing gymnasia, stadia, or other recreational facilities, and to mortgage and encumber the same, and the income, tolls, fees, rents and other charges thereof, and everything pertaining thereto, acquired or to be acquired, and to evidence the obligation therefor by the issuance of bonds, notes or warrants * * *". See also Article 2802e-1, a later and similar Act, relating to independent school districts and cities which have assumed control of the public schools situated therein. Both statutes contain the following provision:

707

"Any revenues remaining after making the
payments hereinabove provided for (payment
of bonds) may be used for any lawful purpose."
(Parenthetical insertion ours).

Even though a stadium has been constructed, bonds
have been issued, and the revenues pledged, under the above
provision those revenues remaining after the bond require-
ments are met may be used for any lawful purpose. And after
the bonds are completely paid off, it is our opinion that
reasonable charges may be made and the moneys thus realized
used for any lawful purpose.

Article 2827, Revised Civil Statutes, reads, in part,
as follows:

"The public free school funds shall not be
expended except for the following purposes:

" * * *

"2. Local school funds from district taxes,
tuition fees of pupils not entitled to free
tuition and other local sources may be used
for the purposes enumerated for State and county
funds and for purchasing appliances and supplies,
for the payment of insurance premiums, janitors
and other employes, for buying school sites, buy-
ing, building and repairing and renting school
houses, and for other purposes necessary in the
conduct of the public schools to be determined by
the Board of Trustees, the accounts and vouchers
for county districts to be approved by the county
superintendent; * * * "    (Emphasis added).

Though football ticket money and money derived from
the operation of a school cafeteria are not tax moneys, it is
our opinion that such moneys are funds from local sources
under Article 2827. You are, therefore, advised that the

Honorable Dan W. Jackson, page #5

board of trustees of an independent school district is charged with the responsibility of the proper safekeeping and expenditure of such funds to the same extent as the board is so charged with respect to tax moneys.  See Articles 2779, 2780, Revised Civil Statutes; 37 Tex. Jur. 967. Of course, if a gymnasium, stadium, etc., has been constructed, evidences of indebtedness issued, and the revenues pledged under Article 2802e or 2802e-1, then such revenues must be used to pay such indebtedness as specified in the statutes; however, any revenues remaining after making the payments provided for may be used for any lawful purpose.

In your second question you ask whether an independent school district may do business with a corporation, a stockholder of which is a member of the board of trustees of such corporation.  We have already answered this question in Opinion No. 0-878, a copy of which is herewith enclosed.  We also enclose for your consideration copies of Opinions No. 0-1589 and No. 0-4000.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By George W. Sparks
Assistant

GWS/s

APPROVED NOV 14, 1942

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

